UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PENN-STAR INSURANCE COMPANY,

                Plaintiff,

       v.

SPEEDO CORP., JOSE GUZMAN, and NEW YORK CITY HOUSING AUTHORITY,

                Defendants.

**MEMORANDUM & ORDER**
21-CV-04694 (HG) (MMH)

**HECTOR GONZALEZ**, United States District Judge:

On August 20, 2021, Plaintiff Penn-Star Insurance Company sued Speedo Corp., the New York City Housing Authority ("NYCHA"), and Jose Guzman, seeking a declaration that it has no duty to defend or indemnify any Defendant or pay any judgments or settlement with respect to claims arising out of an injury that Mr. Guzman allegedly suffered.  ECF No. 1 (Complaint).  On September 28, 2021, NYCHA asserted counterclaims seeking a declaration that Penn-Star is obligated to defend and indemnify NYCHA with respect to claims arising out of Mr. Guzman's injury.  ECF No. 17 (NYCHA Answer and Counterclaims).  Penn-Star and NYCHA have filed cross-motions seeking summary judgment.  ECF No. 60-25 (Penn-Star Motion for Summary Judgment); ECF No. 61-22 (NYCHA Motion for Summary Judgment).  Penn-Star also seeks summary judgment against Speedo, which has not appeared to defend this action.  ECF No. 60-25.  For the reasons explained herein, Penn-Star's motion is granted as to NYCHA but denied without prejudice as to Speedo, and NYCHA's motion is denied.

# BACKGROUND[1]

In June of 2019, Speedo contracted with NYCHA to paint certain NYCHA apartments. ECF No. 62 ¶¶ 2–8 (Penn-Star Rule 56.1 Counterstatement); ECF No. 61-5 (Speedo-NYCHA Contract Materials); ECF No. 61-6 (NYCHA Purchase Order); ECF No. 61-7 (NYCHA Insurance Requirements). Speedo's contract with NYCHA required Speedo to obtain commercial general liability insurance and to name NYCHA as an additional insured.[2] ECF No. 62 ¶ 7; ECF No. 61-6 at 24, 34–37; ECF No. 61-7. Speedo obtained an insurance policy issued by Penn-Star that was in effect from February 17, 2020, to February 17, 2021 (the "Policy"). ECF No. 62 ¶ 15; ECF No. 60-4 (Speedo Insurance Policy). The Policy provided that if Penn-Star had "agreed in writing in a contract or agreement" that an entity "be added as an additional insured," then the definition of who is insured "[would be] amended to include as an additional insured" such entity. ECF No. 60-4 at 5.[3] The Policy also contained an exclusion pursuant to which "bodily injury" to any (1) employee, temporary worker, or volunteer worker of any insured arising out of or in the course of "[e]mployment by any insured" or performance of "duties related to the conduct of any insured's business," or (2) any person performing work "that any insured has the authority to control or supervise," was excluded from coverage (the "Employee Exclusion"). *Id.* at 7.

---

[1] Unless otherwise specified, the facts cited herein are undisputed.

[2] An "additional insured" provision extends insurance coverage to an entity other than the named insured, such that it "enjoy[s] the same protection as the named insured." *Kassis v. Ohio Cas. Ins. Co.*, 913 N.E.2d 933, 934 (N.Y. 2009) (emphasis omitted). The purpose of such a provision is to "protect additional insureds from vicarious liability for the named insured's negligence." *Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Conn.*, No. 19-cv-1355, 2021 WL 797670, at *3 (S.D.N.Y. Mar. 1, 2021). Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

[3] The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

On October 6, 2020, while Jose Guzman was painting an apartment in a NYCHA apartment building (the "NYCHA Apartment"), he allegedly fell from a ladder and was injured (the "Guzman Incident").  ECF No. 62 ¶ 13.  Prior to October 6, 2020, Mr. Guzman had been employed by Speedo and had painted NYCHA apartments in the building as part of his work for Speedo.  ECF No. 61-3 ¶¶ 2–3 (NYCHA 56.1 Counterstatement).  On December 14, 2020, Mr. Guzman served NYCHA with a notice of claim in connection with the Guzman Incident that did not reference Speedo nor name Mr. Guzman's employer (the "Guzman Notice of Claim").  ECF No. 62 ¶ 16; ECF No. 61-13 (Guzman Notice of Claim).  On January 11, 2021, NYCHA sent Speedo a letter demanding that Speedo assume NYCHA's defense and indemnification (the "NYCHA Demand Letter") because Mr. Guzman claimed he was injured while working as a "construction worker" at a NYCHA building on a project for which Speedo "was the contractor." ECF No. 60-7 (NYCHA Demand Letter).

Penn-Star first learned of a potential claim related to the Guzman Incident when Speedo provided it with a notice of occurrence on January 25, 2021.  ECF No. 62 ¶¶ 21–22; ECF No. 61-3 ¶ 2; ECF No. 60-5 (Speedo Notice of Occurrence and Penn-Star Claim Notes).  Speedo's notice did not refer to Mr. Guzman by name, and explained that "the claimant worked for [Speedo] part time for 5-6 weeks," that when the claimant came to Speedo looking for more work, he was told that Speedo "didn't have any work for [him]," and that "on October 6th, 2020, [the date of the Guzman Incident,] the claimant wasn't asked to come to work."  ECF No. 60-5 at 2.  The notice further explained that Speedo "didn't provide any ladder for the painting work," and that "the claimant did not sign the NYCHA log book" on October 6, 2020.  *Id.*  The moving parties agree that it was not clear from the face of the notice of occurrence who the claimant was

3

nor whether the claimant was claiming to be an employee of Speedo on the date of the incident. ECF No. 62 ¶ 23; ECF No. 61-3 ¶ 5; ECF No. 61-22 at 8.

Thereafter, Carolyn Price, a Penn-Star employee, conducted an investigation—the sufficiency, diligence, and timeliness of which is disputed—to determine whether Penn-Star would disclaim coverage pursuant to any exclusion to the Policy. ECF No. 61-3 ¶¶ 3–5, 11. On January 26, 2021, Ms. Price emailed Speedo and asked for the identity of the claimant and whether Speedo had received any written notice of claim. ECF No. 60-8 at 3 (Penn-Star Claim-Related Correspondence); ECF No. 60-5 at 8. Two days later, Ms. Price spoke to Speedo's president, who told her that Mr. Guzman was the claimant and that he was making a claim against Speedo alleging he fell from a ladder while painting. ECF No. 62 ¶ 24; ECF No. 60-5 at 21. The next day, Speedo forwarded Penn-Star the NYCHA Demand Letter and the Guzman Notice of Claim. ECF No. 60-7; ECF No. 61-3 ¶¶ 6–7; ECF No. 60-8 at 3. Thereafter, on two separate occasions in early February, Ms. Price emailed Speedo and asked for Speedo's contract with NYCHA and for information about Mr. Guzman's relationship with Speedo, including whether he was an employee or "working in any capacity for Speedo Corp on 10/6/2020 at [the NYCHA Apartment]." ECF No. 62 ¶ 25; ECF No. 61-3 ¶ 9; ECF No. 60-8 at 2. On February 9, Speedo responded, explaining that Mr. Guzman had been a Speedo employee between August and October 2, 2020, was "laid off from work" "the week of [] October 2nd," and "was not working on October 6th" at the NYCHA Apartment. ECF No. 60-8 at 2; ECF No. 62 ¶ 25.

The next day, Ms. Price again asked Speedo to provide her with a copy of the contract between Speedo and NYCHA but Speedo did not respond. ECF No. 60-8 at 1. That same day, Ms. Price also left a voicemail for Mr. Guzman's attorney seeking information about his claim, including why Mr. Guzman was at the NYCHA Apartment on October 6, 2020, whom he was

4

working for, who provided the ladder, and whether he had filed a workers' compensation claim. ECF No. 60-5 at 18. Between February 10 and March 9, Ms. Price followed up with Speedo three times by email and with Mr. Guzman's attorney once by phone and twice by email but received no responses. ECF No. 60-8 at 10–11; ECF No. 60-5 at 17–18.

On February 12, NYCHA "tendered [its] defense and indemnity" to Penn-Star with respect to the Guzman Notice of Claim by sending Penn-Star the NYCHA Demand Letter. ECF No. 62 ¶ 17; ECF No. 61-14 (NYCHA Tender Letter). On March 18, NYCHA reached out to Ms. Price regarding the status of its claim. ECF No. 60-8 at 8. Ms. Price responded the next day, explained that she was waiting for information from the "claimant attorney" on the "loss detail," and asked NYCHA to send her the contract between NYCHA and Speedo. *Id.* NYCHA sent Ms. Price a portion of the agreement between Speedo and NYCHA the same day and explained that it had "noticed the statutory hearing [authorized by NY General Municipal Law Section 50-H] for 3/25/21" and that it would "be happy to share information about loss details alleged" after the hearing (the "Section 50-H Hearing").[4] *Id.* at 7–8.

Ms. Price followed up with Mr. Guzman's attorney five more times between March 19, and May 12, but again received no response from Mr. Guzman's attorney. *Id.* at 10–11; ECF No. 60-5 at 14. Ms. Price also contacted Speedo on May 12, but did not receive a response. ECF No. 60-8 at 1. On April 24, Mr. Guzman filed suit against NYCHA in New York Supreme Court (the "Underlying Action"). ECF No. 62 ¶ 18; ECF No. 61-3 ¶ 19; ECF No. 60-13 (Guzman State Court Complaint). Penn-Star was not notified that Mr. Guzman had filed suit. ECF No. 62-1 at 22.

---

[4] The New York General Municipal Law provides that City-affiliated entities like NYCHA may "demand an examination of [a] claimant" who has filed a notice of claim against them. N.Y. Gen. Mun. Law § 50-H.

Ms. Price next reached out to NYCHA on May 3, to ask for the transcript from the Section 50-H Hearing, which NYCHA sent a week later. ECF No. 61-17 (NYCHA-Penn-Star Email Correspondence); ECF No. 62 ¶ 31; ECF No. 61-3 ¶ 15; ECF No. 60-8 at 7. In his testimony, Mr. Guzman stated that on the day of the Guzman Incident he "was working for Spiro Construction." ECF No. 61-3 ¶ 16; ECF No. 60-10 at 2–3 (Section 50-H Hearing Testimony). Penn-Star interpreted "Spiro Construction" to be a reference to Speedo and understood Mr. Guzman to be stating that Speedo was his employer at the time of the Guzman Incident. ECF No. 61-3 ¶ 16. On May 14, Berkshire Hathaway Guard, Speedo's workers' compensation insurer, sent Penn-Star a letter referencing a workers' compensation lien that identified Speedo as Mr. Guzman's employer at the time of the Guzman Incident. ECF No. 60-11 (Workers' Compensation Letter); ECF No. 61-3 ¶ 17.

Three weeks later, on June 1, 2021, Penn-Star sent NYCHA and Speedo a letter disclaiming coverage on three grounds, including that the Employee Exclusion applied. ECF No. 62 ¶ 19; ECF No. 61-3 ¶ 8. On August 3, 2021, in the Underlying Action, NYCHA filed a third-party complaint against Speedo, asserting claims for contractual and common law indemnification, breach of contract, and contribution. ECF No. 60-14 (NYCHA Third-Party Complaint). In the third-party complaint, NYCHA specifically alleges that Mr. Guzman was a Speedo employee at the time of the Guzman Incident. ECF No. 61-3 ¶ 21; ECF No. 60-14 at 5.

## PROCEDURAL HISTORY

Plaintiff filed this declaratory judgment action against Mr. Guzman, NYCHA, and Speedo, on August 20, 2021, seeking a declaration that it has no obligation to provide a defense to or indemnify any party in relation to the claims asserted in the Underlying Action. ECF No. 1 ¶¶ 25–42. Speedo has not appeared, and the Clerk of Court entered Speedo's default on

November 2, 2021.  ECF No. 23 (Clerk's Entry of Default).  On November 10, 2021, the Court stayed Penn-Star's deadline to move for a default judgment against Speedo.  NYCHA filed its Answer on September 28, 2021, in which it asserted counterclaims against Penn-Star seeking a declaration that Penn-Star has the sole and primary duty to defend and indemnify it in the Underlying Action as well as attorneys' fees, costs, and disbursements incurred in this action.  ECF No. 17 at ¶¶ 51–85.  On October 10, 2023, Penn-Star and NYCHA docketed their respective cross-motions seeking summary judgment, their oppositions, and their replies.  ECF No. 60-25; ECF No. 61-22; ECF No. 62-1 (Penn-Star Opposition and Reply); ECF No. 63 (NYCHA Reply).  Mr. Guzman has not sought summary judgment but filed a letter stating that he "oppose[s] the granting of summary judgment" to Penn-Star.  ECF No. 54 (Guzman Letter).

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving

party.  *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  When parties file cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales v. Quinel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

**DISCUSSION**

**I.    NYCHA**

The dispute between Penn-Star and NYCHA turns on the timing of Penn-Star's disclaimer of coverage and the diligence of the investigation that led to its disclaimer.[5]  New York Insurance Law Section 3420(d)(2) provides that "in cases involving death and bodily injury claims arising out of a New York accident and brought under a New York liability policy," the insurer is "require[d] . . . to provide a timely disclaimer for denials of coverage."  *See Penn-Star Ins. Co. v. Loring Place Realty LLC*, No. 22-cv-1154, 2024 WL 1255423, at *6 (S.D.N.Y. Mar. 25, 2024).[6]  When such a disclaimer is based on a policy exclusion, "failure to provide a timely disclaimer under Section 3420(d) precludes denial of coverage."  *Id.*  However, the "[t]imeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the

---

[5]    For the purpose of its motion, Penn-Star does not actually dispute NYCHA's argument that, pursuant to the Policy, NYCHA would qualify as an additional insured of Speedo such that if Penn-Star is estopped from denying coverage because its disclaimer was untimely, Penn-Star must defend and indemnify NYCHA in connection with the Guzman Incident.  *See generally* ECF No. 60-25; ECF No. 62-1.  Similarly, in its motion papers, NYCHA does not contest—and in fact appears to agree—that Mr. Guzman was employed by Speedo at the time of the Guzman Incident.  ECF No. 61-22 at 20 ("[H]ad Penn-Star asked for information from NYCHA, it would have immediately learned that . . . NYCHA understood that Mr. Guzman was employed by Speedo on the date of the accident."); ECF No. 63.

[6]    "By relying on New York law in their papers, the parties have implicitly agreed that New York law governs, and therefore the Court need not undertake a choice-of-law analysis."  *Defebio v. Allstate Ins. Co.*, No. 16-cv-5735, 2018 WL 4689131, at *4 n.3 (E.D.N.Y. Sept. 28, 2018).

8

grounds for disclaimer of liability or denial of coverage" and has "sufficient knowledge of facts entitling it to disclaim." *Crescent Beach Club LLC v. Indian Harbor Ins. Co.*, 468 F. Supp. 3d 515, 537 (E.D.N.Y. 2020).

Indeed, "the delay occasioned by a reasonably prompt, thorough, and diligent investigation of the claim does not render the insurer's disclaimer untimely, because an investigation is often necessary to determine whether there is any basis for disclaiming coverage." *Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F. 3d 209, 216 (2d Cir. 2004); *see also U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2004) (holding that "[w]here the grounds for disclaimer are not readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage" but "has an obligation to engage in a reasonably prompt, thorough, and diligent investigation of the claim"); *James River Ins. Co. v. Power Mgmt. Inc.*, 55 F. Supp. 3d 446, 455 (E.D.N.Y. 2014) ("To suggest that an insurance company has waived its right to assert a defense when it undertakes an investigation is contrary to both common sense and well-established law," and "[d]elaying a disclaimer of coverage for investigative reasons is only unreasonable when the basis for denying coverage was or should have been apparent before the onset of the delay."). "An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay," and the "question whether an insurer disclaimed as soon as reasonably possible is necessarily case-specific." *Crescent Beach Club*, 368 F. Supp. 3d at 537.

In examining a delay in disclaiming coverage caused by an investigation, there is "no exact number of days that can be said to be reasonable or unreasonable," but rather "the determination of whether a delay is reasonable is fact-specific and ultimately focuses on whether the investigation was used as a dilatory tactic or was made promptly and in good faith." *Id.* at

9

538. "New York courts have found that a disclaimer of coverage issued within a month after the insurer obtains sufficient facts to form the basis of the disclaimer is, as a matter of law, reasonable." *Liberty Ins. Underwriters Inc. v. Great Am. Ins. Co.*, No. 09-cv-4912, 2010 WL 3629470, at *9 (S.D.N.Y. Sept. 17, 2010); *see also Crescent Beach Club*, 468 F. Supp. 3d at 537 (holding that insurer who disclaimed coverage one month "after it became readily apparent from the evidence it received" that disclaimer was permitted and after conducting a 17-month investigation had disclaimed coverage within a reasonable time).

Here, the parties agree as to all material facts necessary to the Court's determination of whether Penn-Star's disclaimer was timely and its investigation was sufficient as a matter of law. Although Penn-Star initially disclaimed coverage to NYCHA on additional grounds, the only ground for disclaimer in dispute in this action is the Employee Exclusion. Surprisingly, NYCHA does not challenge whether the Employee Exclusion is applicable, agreeing, as previously noted, that Mr. Guzman was a Speedo employee at the time he was injured. *See, e.g.*, ECF No. 61-22 at 20–21. NYCHA also does not dispute that the Employee Exclusion in the Policy would function to bar coverage for Speedo and NYCHA for claims related to the Guzman Incident provided Penn-Star conducted a reasonable and diligent investigation and timely disclaimed coverage.[7] ECF No. 60-25 at 21–26; ECF No. 63 at 6–7. The parties agree that, after receiving Speedo's notice of occurrence on January 25, 2021, and NYCHA's tender on February 12, 2021, Penn-Star needed to conduct an investigation to determine whether any exclusions might apply. ECF No. 62-1 at 10–12; ECF No. 63 at 6. As NYCHA states, "[t]he issue before the Court is not

---

[7] NYCHA puts all its eggs in one basket, relying solely on its argument that Penn-Star should be estopped from denying coverage because its investigation was not sufficiently diligent, making its disclaimer of coverage untimely.

10

whether or not Penn-Star was justified in performing an investigation; the issue is whether Penn-Star's investigation was reasonable and diligent." ECF No. 63 at 6.

Penn-Star argues that it disclaimed coverage "as soon as [] reasonably possible" after conducting a roughly three-and-a-half-month diligent investigation and determining that a disclaimer was appropriate. ECF No. 60-25 at 17–19. Penn-Star asserts that it "immediately commenced an investigation" into Mr. Guzman's employment at the time of his accident, and that Guzman and Speedo "were the cause of" any "delay" or "misinformation" in the investigation. *Id.* at 19–20. Although NYCHA vehemently disputes the sufficiency of Penn-Star's investigation, it cannot dispute the chronology of Penn-Star's interactions with Speedo or its efforts to contact Mr. Guzman's attorney, which are also supported by the record. ECF No. 61-3 ¶¶ 9–11, 13, 15; ECF No. 60-5; ECF No. 60-8. According to Penn-Star, "[i]t was not until May 11, 2021, when Penn-Star first received [Mr.] Guzman's position" after NYCHA provided it with his testimony from the Section 50-H Hearing, as further confirmed by the workers' compensation letter, that Penn-Star first received "sufficient information to form a basis to deny coverage." ECF No. 60-25 at 7. And, Penn-Star argues, it timely disclaimed coverage 21 days thereafter on June 1, 2021, after consulting with coverage counsel. ECF No. 62-1 at 22.

NYCHA argues that Penn-Star should be estopped from denying NYCHA coverage under the Employee Exclusion because it did not timely disclaim coverage. ECF No. 61-22 at 11–12, 15–24. Although NYCHA does not contest that an investigation was warranted, NYCHA asserts that Penn-Star's investigation was flawed and not conducted with sufficient diligence, resulting in a "three and one half month delay in disclaiming coverage to NYCHA," calculated from the date of NYCHA's tender, "which is untimely as a matter of law." *Id*. at 15–17; ECF No. 63 at 6. NYCHA, however, has not identified any information that Penn-Star actually

11

received prior to May 11, 2021, that would have given it grounds to disclaim coverage earlier on the basis of the Employee Exclusion.  *See generally* ECF No. 61-22; ECF No. 63.  Nor does NYCHA point to a specific point in time between February 12, 2021, and June 1, 2021, when NYCHA should have disclaimed coverage.  *See generally* ECF No. 61-22; ECF No. 63.  Rather, NYCHA merely speculates that if Penn-Star had explored other "obvious and available sources of information about the accident" sooner, it "would have uncovered facts about Mr. Guzman's employment much sooner."  ECF No. 61-22 at 6.  Specifically, NYCHA argues that Penn-Star's failure to ask NYCHA about Mr. Guzman's employment and to conduct a "more thorough inquiry" of Speedo's relationship with Mr. Guzman, including by asking Speedo sooner if Mr. Guzman had filed a workers' compensation claim, means it did not conduct a diligent investigation.  *Id.* at 16–19.

The Court finds NYCHA's arguments unpersuasive and agrees with Penn-Star that the undisputed evidence demonstrates that it conducted a reasonable and diligent investigation into whether the Employee Exclusion might apply to Mr. Guzman's claims after "initially receiv[ing] inaccurate information," that it timely disclaimed coverage after discovering that grounds for disclaimer existed, and that any delay in the investigation was not caused by Penn-Star.  *See Crescent Beach Club*, 468 F. Supp. 3d at 538–40; *see also Defebio*, 2018 WL 4689131, at *7 (holding that "the undisputed record shows a prompt and diligent investigation" by an insurer who made repeated attempts to procure information relevant to the at-issue claim despite the non-cooperation of key witnesses).

The undisputed facts here plainly show that Penn-Star did not "adopt a wait and see posture" or "fail[] to take basic investigatory steps."  *Ramirez v. Imperium Ins. Co.*, No. 14-cv-2618, 2016 WL 11472219, at *9 (E.D.N.Y. Mar. 31, 2016).  Rather, the record reflects that

12

Penn-Star's investigator, Ms. Price, reached out to Speedo seeking additional information on January 26, 2021, one day after Speedo submitted its claim. ECF No. 60-8 at 3; ECF No. 60-5 at 8. Although Speedo was initially responsive to Ms. Price, it gave her misleading and inaccurate information, and did not provide her with all the information she initially sought (*i.e.*, Speedo's contract with NYCHA). ECF No. 60-5 at 21; ECF No. 60-8 at 2–3; ECF No. 61-22 at 20 (NYCHA acknowledges that "Speedo incorrectly notified Penn-Star that Mr. Guzman was not employed by Speedo").[8] Then, inexplicably, after telling Ms. Price that Mr. Guzman was not employed by Speedo on the date of the Guzman Incident, Speedo stopped responding to Ms. Price on February 10, 2021, despite her efforts to follow up on four separate occasions between February and May. ECF No. 60-8 at 10–11; ECF No. 60-5 at 17. NYCHA appears to fault Ms. Price for failing to ask Speedo certain questions, including whether Mr. Guzman had filed a workers' compensation claim, earlier in the investigation. ECF No. 61-22 at 17–19; ECF No. 63 at 8. However, NYCHA's assertion that asking these questions to Speedo sooner would somehow have allowed Penn-Star to disclaim coverage sooner is pure speculation unsupported by the record, which actually demonstrates that Speedo repeatedly failed to provide Penn-Star with requested documents and information, made deliberate and misleading efforts to convince Penn-Star that Mr. Guzman was not a Speedo employee on the date he was injured, and stopped responding to Penn-Star's inquiries within two weeks of initial contact. ECF No. 60-5 at 21; ECF No. 60-8 at 2–3.

---

[8] NYCHA faults Ms. Price for not asking Speedo "until February 3, 2021, 10 days after the claim came in," whether "Mr. Guzman was employed by Speedo or its subcontractor on the date of loss." ECF No. 61-22 at 18. However, given that Speedo answered her inquiries with misleading information, explaining that Mr. Guzman had been "laid off from work" at Speedo prior to the date of loss, it is not clear how Ms. Price asking that question any sooner would have allowed Penn-Star to determine earlier in the investigation that the Employee Exclusion might be applicable.

Similarly, Ms. Price was stymied in her efforts to contact Mr. Guzman, the injured party and the individual who was bringing claims against NYCHA. The record reflects that Ms. Price reached out to Mr. Guzman's counsel nine times by both email and phone between February and May but did not receive a single response. ECF No. 60-5 at 13–18. NYCHA faults Ms. Price for not learning that Mr. Guzman had filed a workers' compensation claim against Speedo sooner in her investigation, but the record reflects that before NYCHA had even tendered its indemnification and defense to Penn-Star, Ms. Price had asked Mr. Guzman's attorney whether he had filed a workers' compensation claim. ECF No. 60-8 at 11; ECF No. 60-5 at 17. The fact that she did not receive a response does not call into question the extent of her diligence.

NYCHA calls itself "an obvious and available source of information" since the Guzman Incident occurred on NYCHA property and Speedo had a contract with NYCHA, and argues that it could have told Penn-Star that NYCHA's understanding was that Mr. Guzman painted the NYCHA Apartment "as an employee of Speedo."[9] ECF No. 61-22 at 19–21. NYCHA further, and unconvincingly, asserts that it was "in the best position" to know the identity of Mr. Guzman's employer. *Id.* at 20. Other than its say-so, it is not obvious to the Court why

---

[9] NYCHA also argues that, to the extent Penn-Star had to investigate whether the Additional Insured Endorsement applied, it was unreasonable for Penn-Star's investigator to wait until March 19, 2021, to ask NYCHA for a copy of the contract between NYCHA and Speedo. ECF No. 63 at 6. Although Penn-Star initially cited the Additional Insured Endorsement of the Policy as a ground for disclaiming coverage, *see* ECF No. 60-12 at 10–15, for the purposes of this motion Penn-Star does not argue that it was entitled to disclaim coverage to NYCHA on that ground, and appears to concede that NYCHA was an additional insured of Speedo. ECF No. 60-25 at 21–25 (arguing that the Employee Exclusion applies to NYCHA as an additional insured of Speedo); ECF No. 62-1 at 13 ("[A]s an additional insured, NYCHA would be subject to the same policy exclusions and endorsements as the name insured."). Accordingly, the Court does not need to evaluate Penn-Star's investigation into whether NYCHA was an additional insured because Penn-Star would not have been able to appropriately disclaim coverage until it had determined whether the Employee Exclusion applied, assuming that its investigation up until that point was diligent.

14

NYCHA believes it was in a better position than Mr. Guzman or Speedo to speak definitively about Mr. Guzman's employment status. The Court agrees with Penn-Star that any information NYCHA could provide would not have been dispositive to Penn-Star's determination whether Mr. Guzman was employed by Speedo at the time of his accident.[10] It was not unreasonable for Ms. Price to attempt to clarify Mr. Guzman's employment status by contacting the employer and alleged employee rather than a third-party who would not have been privy to any conversation about Mr. Guzman's supposed termination.[11] ECF No. 60-2 at 3; ECF No. 62-1 at 16.

NYCHA relies on *Travelers Insurance Company v. Monpere* to support its assertion that, as a matter of law, Penn-Star's investigation was not diligent. No. 93-cv-0127, 1997 WL 9792 (W.D.N.Y. Jan. 2, 1997); *see also* ECF No. 63 at 10–11. However, the facts in *Travelers* are clearly distinguishable from what happened here. In *Travelers*, the insurance company waited two-and-a-half years to disclaim coverage and argued that such a substantial delay was reasonable because it was caused by the insured's refusal to cooperate with its investigation. *Id.* at *6. The court concluded that the insurance company's investigation was "far from diligent" because it "consisted solely" of reviewing its own internal files, contacting the agent who sold the policies to the insured, and sending five letters over the course of two-and-a-half years to the insured. *Id.* The court also noted that the insurer made "absolutely no attempt to contact" alternative sources of potentially relevant information. *Id.* Here, by contrast, Penn-Star

---

[10]   Indeed, at best, the information that NYCHA says it would have provided to Penn-Star about Mr. Guzman's employment status, *see* ECF No. 61-22 at 19–21; ECF No. 63 at 12, would have created additional ambiguities since Speedo had continued to represent to Penn-Star that Mr. Guzman was not an employee on the date of the Guzman Incident.

[11]   Indeed, in his deposition, the NYCHA superintendent for the location at which Mr. Guzman was injured testified that Speedo would not have been required to tell NYCHA if it terminated a specific employee. ECF No. 61-10 at 11.

15

immediately reached out to its insured, sought information from the injured individual, as well as from NYCHA, and diligently followed up over the course of only a few months.

Rather, the Court finds the holding in *Corcoran v. National Specialty Insurance Company* to be more persuasive and on point. No. 15-cv-2489, 2017 WL 9482099 (E.D.N.Y. Aug. 15, 2017). In *Corcoran*, the insurance company disclaimed coverage roughly four-and-a-half months after receiving a notice of claim and after conducting an investigation during which both the insured and the injured party "failed to provide any details concerning the nature of the incident," thwarting its efforts. *Id.* at *6. Like Penn-Star, over the course of its four-and-a-half-month investigation, the insurer in *Corcoran* had attempted to reach out to the injured party multiple times despite never receiving a response. *Id.* at *3–4. Although the injured party in *Corcoran* complained that the insurer's investigation was "woefully inadequate" because the insurance company failed to take specific investigative steps, the court nevertheless found that the investigation "satisfied the applicable standard of reasonableness, and that [the insurer's] disclaimer of coverage was therefore not untimely." *Id.* at *6–7. Here, the record reflects that Penn-Star took "prompt steps to secure more information about the employment relationship[]" relevant to its potential disclaimer. *Smolarczyk v. U.S. Liab. Ins. Grp.*, No. 03-cv-1051, 2007 WL 9706973, at *7 (E.D.N.Y. 2007). That Penn-Star, in the face of non-responsiveness and Speedo's continued insistence that it had not employed Mr. Guzman on the date of the incident, was unable to determine Mr. Guzman's employment status sooner, "does not render its investigation unduly protracted." *Id.* Like the court in *Corcoran*, I do not "read New York Insurance Law § 3420(d) . . . to require an insurer to perform extensive investigative action" when key sources of information are proving non-cooperative. 2017 WL 9482099, at *7. And, as other courts have noted, I too am "loath to discourage insurers from conducting thorough

16

investigations, especially where, as here, an insurer is presented with materials containing conflicting information and factual inaccuracies." *Smolarczyk*, 2007 WL 9706973, at *7.

Because Penn-Star's investigation was necessary, thorough, diligent, and delayed by Speedo's and Mr. Guzman's non-responsiveness, the Court finds that Penn-Star has met its burden to establish that its disclaimer less than four months after NYCHA's tender was not untimely. *See, e.g.*, *United Fin. Cas. Co. v. Country-Wide Ins. Co.*, 779 F. App'x 761, 764 (2d Cir. 2019) (finding that insurer's investigation was reasonable and diligent when its efforts to timely determine whether there were grounds to disclaim coverage were frustrated by the non-responsiveness of the entity from which it sought information); *U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, No. 02-cv-4182, 2007 WL 1040028, at *11 (S.D.N.Y. Apr. 4, 2007) (concluding that the insurance company's investigation was reasonable and rejecting NYCHA's argument that the insurance company could have disclaimed coverage sooner if the employee investigating the claim had consulted with additional sources as part of her investigation); *Peleus Ins. Co. v. Atl. State. Dev. Corp.*, 587 F. Supp. 3d 7, 19–20 (S.D.N.Y. 2022) (five-month delay between commencement of investigation and disclaimer of coverage was not unreasonable when "the entity that held the information necessary" for the insurer to determine whether an exclusion applied ignored repeated outreach from the insurer); *Vesta Fire In. Corp. v. Seymour*, No. 96-cv-3844, 1996 WL 1057158, at *6 (E.D.N.Y. Dec. 17, 1996) (three-month investigation that included an "unsuccessful search for the insured," was reasonable as a matter of law).[12]

---

[12] The Court also finds that the 21 days it took Penn-Star to disclaim coverage after learning that Mr. Guzman had alleged in his Section 50-H Hearing that he was working for Speedo at the time of his injury was not untimely as a matter of law. *See, e.g.*, *Peleus*, 587 F. Supp. 3d at 18 (explaining that, in cases where an insurer conducts a prompt, good faith investigation, "short delays from the operative date—*i.e.*, when the insurer first learned of the grounds for disclaimer of liability or denial of coverage—to when the insurer provided the notice" have been found to

17

Accordingly, Penn-Star's motion is granted as to NYCHA. Penn-Star is awarded a declaration that it has no duty to defend or indemnify NYCHA or to pay any judgments or settlement against NYCHA related to the Guzman Incident.[13]

## II. Speedo and Mr. Guzman

In its motion for summary judgment, Penn-Star seeks an order declaring that Penn-Star has "no duty to defend or indemnify *any party*," which the Court understands to include Speedo. ECF No. 60-25 at 6 (emphasis added). However, Speedo is in default and has not appeared in this action. Specifically, after Speedo failed to appear and defend this action, Penn-Star requested a certificate of default from the Clerk of Court. ECF No. 21 (Penn-Star's Request for Certificate of Default). The Clerk of Court entered Speedo's default on October 29, 2021, *see* ECF No. 23, and on November 10, 2021, the Court stayed Penn-Star's deadline to move for a default judgment against Speedo, pending the resolution of Penn-Star's and NYCHA's anticipated dispositive motions. *See* Nov. 10, 2021, Minute Entry and Order.

Because summary judgment and default judgment are distinct remedies, courts "must take care not to sidestep the limitations" of the Federal Rules of Civil Procedure "by granting

---

be "reasonable as a matter of law" and that, in general, disclaimers made within 30 days of the insurer discovering the grounds for disclaimer of liability are treated as timely); *United Specialty Ins. Co. v. JD Com. Builders Inc.*, No. 18-cv-6735, 2020 WL 4901761, at *4 (S.D.N.Y. Aug. 20, 2020) ("It is well settled that insurers do not have to stop everything to send out a disclaimer on the very day that they learn of grounds for doing so – or on the day after, or the day after that. Courts have frequently held that delays of one month or more were reasonable as a matter of law where an insurer had performed an investigation . . . .").

[13] Mindful of its "broad discretion" to decline to exercise jurisdiction under the Declaratory Judgment Act, in determining that a declaratory judgment is appropriate here, the Court has considered the six factors laid out in *Admiral Insurance Company v. Niagara Transformers Company*, and determined that issuing a declaratory judgment in this case will "serve a useful purpose in clarifying [and] settling the legal issues involved" and "finalize the controversy." 57 F.4th 85, 99–100 (2d Cir. 2023)

summary judgment in a procedural circumstance that calls for default judgment." *Cont'l Ins. Co. v. Huff Enters. Inc.*, No. 07-cv-3821, 2009 WL 3756630, at *2 (E.D.N.Y. Nov. 6, 2009).  To the extent that Penn-Star seeks summary judgment against Speedo, because "it has obtained a clerk's entry of default" against Speedo, "such relief is improper," and "the appropriate procedure for Plaintiff to follow is a default judgment pursuant to Fed. R. Civ. P. 55(b)(2)." *Progressive Advanced Ins. Co. v. Zafuto*, No. 19-cv-338, 2020 WL 2115420, at *2 (W.D.N.Y. Mar. 23, 2020).

Accordingly, if it so intends, on or before October 30, 2024, Penn-Star shall file a motion seeking a default judgment against Speedo.  Penn-Star need not follow the process of filing a pre-motion letter required by Section IV.A of the Court's Individual Practices.  In addition to the service requirements of the Federal Rules of Civil Procedure, Penn-Star shall attempt to send, as soon as reasonably possible, this Order and the Clerk of Court's certificate of default directly to either Speedo or one of Speedo's attorneys, employees, or other representatives, and Penn-Star shall file a declaration by its counsel or other knowledgeable person describing that service on or before October 7, 2024.  Penn-Star shall serve the default judgment papers in the same manner as soon as reasonably possible upon filing the motion for default judgment and shall file a declaration describing that service within two business days of filing the motion.

It is not clear to the Court what remedy, if any, Penn-Star seeks as to Mr. Guzman, who is also named as a Defendant in this action.  Accordingly, on or before October 14, 2024, Penn-Star shall file a letter on the docket informing the Court how it intends to proceed with respect to any claims it has asserted against Mr. Guzman.

## **CONCLUSION**

For the reasons explained herein, Penn-Star's motion for summary judgment is granted as to NYCHA but denied without prejudice as to Speedo.  NYCHA's motion for summary judgment is denied.  Penn-Star is awarded a declaration that it has no duty to defend or indemnify NYCHA or pay any judgments or settlement against NYCHA in relation to the claims asserted in the Underlying Action.  The Clerk of Court is respectfully directed to enter partial judgment consistent with this Order.

On or before October 30, 2024, if it so intends, Penn-Star shall file a motion seeking the entry of a default judgment against Speedo.  On or before October 14, 2024, Penn-Star shall file a letter on the docket informing the Court how it intends to proceed with respect to any claims it has asserted against Mr. Guzman.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 30, 2024